UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 8: 24 cr 487 CEH - AAS

BRIDGET LUZOD and                           21 U.S.C. § 846
DR. VICTOR SILVA                            21 U.S.C. § 841(a)(1)
                                            21 U.S.C. § 856(a)(1)
                                            21 U.S.C. § 843(a)(2)

## INDICTMENT

The Grand Jury charges:

NOV 12 2024
FILED - USDC - FLMD - TPA

## COUNT ONE
(Conspiracy to Commit Unlawful Distribution of Controlled Substances)

### A. Introduction

At all times material to this Indictment:

1.      Defendant BRIDGET LUZOD was not licensed to practice medicine in
the State of Florida and did not have a Drug Enforcement Administration ("DEA")
registration number to prescribe controlled substances. LUZOD held only a State of
Florida Basic X-Ray Machine Operator license, which expired in 2018 and which
LUZOD did not renew until March 2024.

2.      LUZOD was the owner and primary operator of Thrive Medical Clinic
("Thrive"), an alternative medicine clinic in Hillsborough County, Florida that she
opened on or about September 2018.

3.    Defendant DR. VICTOR SILVA was a physician licensed to practice medicine in the State of Florida and held a DEA registration number to prescribe controlled substances.

4.    Beginning on an unknown date no later than March 2020 and continuing until an unknown date no earlier than March 2024, LUZOD employed DR. SILVA as Thrive's medical director.

5.    LUZOD treated patients at Thrive and in conjunction with that treatment, issued prescriptions for controlled substances, including amphetamine/dextroamphetamine (brand name Adderall), a Schedule II controlled substance; lisdexamfetamine dimesylate (brand name Vyvanse), a Schedule II controlled substance; hydrocodone, a Schedule II controlled substance; testosterone, a Schedule III controlled substance; and phentermine, a Schedule IV controlled substance, for no legitimate medical purpose in the usual course of professional practice and without proper DEA authorization.

6.    LUZOD similarly treated members of her family and issued prescriptions for controlled substances to them, including amphetamine/dextroamphetamine and lisdexamfetamine dimesylate, for no legitimate medical purpose in the usual course of professional practice and without proper DEA authorization.

7.    DR. SILVA knowingly and intentionally allowed LUZOD to use his DEA registration number to issue these improper prescriptions.

8.      DR. SILVA knowingly and intentionally allowed LUZOD to use a stamp to affix his signature to these improper prescriptions.

9.      The Controlled Substances Act, 21 U.S.C. § 801 *et seq.* (the "CSA"), governed the manufacture, distribution, and dispensing of controlled substances in the United States, including narcotics that were prescribed by physicians. The CSA established certain drugs and substances as "controlled substances," which were assigned to one of five schedules, Schedule I, II, III, IV, or V, depending on each drug's potential for abuse, likelihood of physical or psychological dependency, and accepted medical use.

10.     The term "Schedule II" denoted controlled substances with a currently accepted medical use in treatment in the United States and that had a high potential for abuse—abuse that could lead to severe physical or psychological dependence. Amphetamine/dextroamphetamine and lisdexamfetamine dimesylate were Schedule II controlled substances. Amphetamine/dextroamphetamine, otherwise known by the brand name Adderall, and lisdexamfetamine dimesylate, otherwise known by the brand name Vyvanse, were stimulant drugs.

11.     The term "Schedule III" denoted controlled substances with a currently accepted medical use in treatment in the United States and that had a lower potential for abuse relative to the drugs or other substances in Schedule II. Abuse of a Schedule III controlled substance could lead to physical dependence but more commonly leads to psychological dependence. Testosterone was a Schedule III controlled substance and a steroid.

12.    The term "Schedule IV" denoted controlled substances that had a lower potential for abuse and dependence relative to the drugs or other substances in Schedule III. Phentermine was a Schedule IV controlled substance.

13.    The CSA and associated federal regulations required that every person who manufactures or distributes any controlled substance, or who proposed to engage in the manufacture or distribution of any controlled substance, must annually register with the DEA and obtain a DEA number to be used in connection with that manufacturing or distribution.

14.    The CSA defined the term "distribute" to mean the delivery of a controlled substance or listed chemical, whether by actual, constructive, or attempted transfer of a controlled substance or listed chemical.

15.    Under the CSA and federal regulations, only medical practitioners registered with the DEA could issue prescriptions for controlled substances.

16.    Under federal regulations, medical practitioners registered with the DEA, such as defendant DR. SILVA, could not issue a prescription for a Schedule II-IV controlled substance unless the prescription was issued for a legitimate medical purpose by an individual practitioner acting in the usual course of their professional practice.

17.    Under federal regulations, prescriptions for controlled substances must be individually signed by the prescribing medical practitioner.

18.    Florida laws and regulations set forth the standards of professional practice governing controlled substance prescribing in Florida for the treatment of

4

chronic pain. Those standards included, among other professional responsibilities, that a physician prescribing such controlled substances:

    a.  Conduct a complete medical history and physical examination that is documented in the medical record before beginning any treatment;

    b.  Develop a written individualized treatment plan and adjust drug therapies to the individual medical needs of each patient;

    c.  Discuss the risks and benefits of the use of controlled substances, including the risks of abuse, addiction, physical dependence, and its consequences while using a written controlled substance agreement outlining the patient's responsibilities;

    d.  See the patient at regular intervals, not to exceed three months, to assess the efficacy of treatment, ensure that controlled substance therapy remained indicated, evaluate the patient's progress toward treatment objectives, consider adverse drug effects, and review the etiology of the pain;

    e.  Reevaluate the appropriateness of continued treatment if a patient's treatment goals were not being achieved, despite medication adjustments;

    f.  Monitor patient compliance in medication usage, related treatment plans, controlled substance agreements, and indications of substance abuse or diversion at a minimum of three-month intervals;

g.  Refer the patient as necessary for additional evaluation and treatment to achieve treatment objectives;

h.  Maintain accurate, current, and complete records; and

i.  Refer patients with signs or symptoms of substance abuse to a board-certified pain management physician, an addiction medicine specialist, or a mental health addiction facility unless the prescribing physician is board-certified or board-eligible in pain management.

## B.    The Charge

19.    Beginning on an unknown date, but not later than March 2020, and continuing through an unknown date no earlier than March 2024, in the Middle District of Florida, and elsewhere, the defendants,

BRIDGET LUZOD
and
DR. VICTOR SILVA,

did knowingly and willfully conspire with each other and with other persons, both known and unknown to the Grand Jury, to distribute and dispense amphetamine/dextroamphetamine (brand name Adderall), a Schedule II controlled substance; lisdexamfetamine dimesylate (brand name Vyvanse), a Schedule II controlled substance; hydrocodone, a Schedule II controlled substance; testosterone, a Schedule III controlled substance; and phentermine, a Schedule IV controlled substance, not for a legitimate medical purpose in the usual course of professional practice.

All in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C) and 841(b)(E)(i) and 841(b)(2).

## COUNT TWO
### (Maintaining a Drug-Involved Premises)

1.    Part A of Count One of this Indictment is realleged and incorporated as though fully set forth herein.

2.    Beginning on or about October 2018, and continuing until approximately April 2024, at 4315 West Bay to Bay Blvd., Tampa, FL 33629, in the Middle District of Florida, the defendant,

### BRIDGET LUZOD,

knowingly used and maintained a place for the purpose of manufacturing and distributing controlled substances, not for a legitimate medical purpose in the usual course of professional practice. The violation involved mixtures and substances containing detectable amounts of amphetamine/dextroamphetamine (brand name Adderall), a Schedule II controlled substance; lisdexamfetamine dimesylate (brand name Vyvanse), a Schedule II controlled substance; hydrocodone, a Schedule II controlled substance; testosterone, a Schedule III controlled substance; and phentermine, a Schedule IV controlled substance.

In violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2.

## COUNTS THREE THROUGH NINETEEN
### (Unlawful Distribution of Controlled Substances)

1.    Part A of Count One of this Indictment is realleged and incorporated as though fully set forth herein.

7

2.    On or about the date set forth below in each count, in the Middle District of Florida, and elsewhere, the defendants,

BRIDGET LUZOD
and
DR. VICTOR SILVA,

did knowingly and intentionally distribute and dispense, and willfully cause to be distributed and dispensed, the Schedule II and III controlled substances identified in each count, not for a legitimate medical purpose in the usual course of professional practice, to the identified individual:

| COUNT | PRESCRIPTION ISSUE DATE | PRESCRIPTION WRITTEN TO | SCHEDULE II OR III CONTROLLED SUBSTANCES |
|---|---|---|---|
| THREE | 10/14/2020 | C.B. | Dextroamphetamine |
| FOUR | 5/25/2021 | C.B. | Dextroamphetamine |
| FIVE | 1/12/2021 | H.H. | Dextroamphetamine |
| SIX | 3/23/2021 | H.H. | Dextroamphetamine |
| SEVEN | 6/3/2021 | H.H. | Dextroamphetamine |
| EIGHT | 3/4/2021 | H.H. | Testosterone |
| NINE | 6/7/2021 | H.H. | Testosterone |
| TEN | 7/16/2021 | H.H. | Testosterone |
| ELEVEN | 8/1/2021 | W.C. | Hydrocodone |
| TWELVE | 3/12/2022 | F.L. | Dextroamphetamine |
| THIRTEEN | 4/13/2022 | F.L. | Dextroamphetamine |
| FOURTEEN | 10/13/2022 | F.L. | Dextroamphetamine |
| FIFTEEN | 6/27/2022 | C.L. | Dextroamphetamine |
| SIXTEEN | 7/27/2022 | C.L. | Dextroamphetamine |
| SEVENTEEN | 8/26/2022 | C.L. | Dextroamphetamine |
| EIGHTEEN | 1/4/2023 | L.S. | Testosterone |
| NINETEEN | 1/4/2023 | L.S. | Testosterone |

In violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 841(b)(E)(i), and 18 U.S.C. § 2.

## COUNT TWENTY
(Unlawful Distribution of a Controlled Substance)

1.    Part A of Count One of this Indictment is realleged and incorporated as though fully set forth herein.

2.    On or about February 29, 2024, in the Middle District of Florida, and elsewhere, the defendant,

## BRIDGET LUZOD,

did knowingly and intentionally distribute and dispense, and willfully cause to be distributed and dispensed testosterone, a Schedule III controlled substance, not for a legitimate medical purpose in the usual course of professional practice, to A.B.

In violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 841(E)(i), and 18 U.S.C. § 2.

## COUNT TWENTY-ONE
(Unlawful Distribution of a Controlled Substance)

1.    Part A of Count One of this Indictment is realleged and incorporated as though fully set forth herein.

2.    On or about March 8, 2024, in the Middle District of Florida, and elsewhere, the defendant,

## BRIDGET LUZOD,

did knowingly and intentionally attempt to distribute and dispense, and willfully attempt to cause to be distributed and dispensed, testosterone, a Schedule III controlled substance, not for a legitimate medical purpose in the usual course of professional practice, to D.H.

9

In violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 841(E)(i), and 18 U.S.C. § 2.

## COUNTS TWENTY-TWO THROUGH FORTY
(Unlawful Distribution of Controlled Substances Using a Registration Number Issued to Another Person)

1.     Part A of Count One of this Indictment is realleged and incorporated as though fully set forth herein.

2.     On or about the date set forth below in each count, in the Middle District of Florida, and elsewhere, the defendants,

BRIDGET LUZOD
and
DR. VICTOR SILVA,

knowingly and intentionally used in course of the distribution or dispensing of a controlled substance, or for the purpose of acquiring or obtaining a controlled substance, a registration number that was fictitious, revoked, suspended, expired, or issued to another person:

| COUNT | PRESCRIPTION ISSUE DATE | PRESCRIPTION WRITTEN TO | SCHEDULE II OR III CONTROLLED SUBSTANCES |
|---|---|---|---|
| TWENTY-TWO | 10/14/2020 | C.B. | Dextroamphetamine |
| TWENTY-THREE | 5/25/2021 | C.B. | Dextroamphetamine |
| TWENTY-FOUR | 1/12/2021 | H.H. | Dextroamphetamine |
| TWENTY-FIVE | 3/23/2021 | H.H. | Dextroamphetamine |
| TWENTY-SIX | 6/3/2021 | H.H. | Dextroamphetamine |
| TWENTY-SEVEN | 3/4/2021 | H.H. | Testosterone |
| TWENTY-EIGHT | 6/7/2021 | H.H. | Testosterone |

10

| COUNT | PRESCRIP TION ISSUE DATE | PRESCRIPTION WRITTEN TO | SCHEDULE II OR III CONTROLLED SUBSTANCES |
|---|---|---|---|
| TWENTY-NINE | 7/16/2021 | H.H. | Testosterone |
| THIRTY | 8/1/2021 | W.C. | Hydrocodone |
| THIRTY-ONE | 3/12/2022 | F.L. | Dextroamphetamine |
| THIRTY-TWO | 4/13/2022 | F.L. | Dextroamphetamine |
| THIRTY-THREE | 10/13/2022 | F.L. | Dextroamphetamine |
| THIRTY-FOUR | 6/27/2022 | C.L. | Dextroamphetamine |
| THIRTY-FIVE | 7/27/2022 | C.L. | Dextroamphetamine |
| THIRTY-SIX | 8/26/2022 | C.L. | Dextroamphetamine |
| THIRTY-SEVEN | 1/4/2023 | L.S. | Testosterone |
| THIRTY-EIGHT | 1/4/2023 | L.S. | Testosterone |
| THIRTY-NINE | 2/29/2024 | A.B. | Testosterone |
| FORTY | 3/8/2024 | D.H. | Testosterone |

In violation of 21 U.S.C. § 843(a)(2) and 18 U.S.C. § 2.

## FORFEITURE

1.     The allegations contained in Counts One through Forty of this Indictment are incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of 21 U.S.C. § 853.

2.     Upon conviction of a violation of 21 U.S.C. §§ 846, 841(a)(1), 856(a)(1), and/or 843(a)(2), the defendants,

BRIDGET LUZOD
and
DR. VICTOR SILVA,

shall forfeit to the United States, pursuant to 21 U.S.C. § 853(a)(1) and (2), any property constituting, or derived from, any proceeds the defendants obtained, directly or indirectly, as a result of such violation, and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such

11

violation.

3.    The property to be forfeited includes, but is not limited to, an order of forfeiture in the amount of proceeds the defendants obtained from the offenses.

4.    If any of the property described above, as a result of any acts or omissions of the defendants:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the Court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property, which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21

U.S.C. § 853(p).

A TRUE BILL,

Foreperson

ROGER B. HANDBERG
United States Attorney

By: _____
Michael M. Gordon
Assistant United States Attorney

By: _____
Carlton C. Gammons
Assistant United States Attorney
Chief, Economic Crimes Section

FORM OBD-34

November 24

No.

## UNITED STATES DISTRICT COURT
Middle District of Florida
Tampa Division

THE UNITED STATES OF AMERICA

vs.

BRIDGET LUZOD and DR. VICTOR SILVA

INDICTMENT

Violations:     21 U.S.C. § 846
21 U.S.C. § 841(a)(1)
21 U.S.C. § 856(a)(1)
21 U.S.C. § 843(a)(2)

A true bill.

Foreperson

Filed in open court this 12th day

of November 2024.

_Lynne Vito_
Clerk

Bail $_____

GPO 863 525